IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLIAM SALMONS and
LISHA SALMONS,

                Plaintiffs,

v.                              CIVIL ACTION NO. 3:06-0288

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, a foreign corporation,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' cross-motions for summary judgment on Plaintiffs William and Lisha Salmons' Complaint for Declaratory Judgment. In their Complaint and on summary judgment, Plaintiffs ask this Court to declare that underinsurance coverage is available under a policy issued by Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union). Defendant asserts that the Plaintiffs' claim is excluded under the policy and, therefore, coverage is unavailable. For the following reasons, the Court agrees with Defendant and **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.

**I.**
**FACTS**

The underlying facts related to Plaintiffs' claim for insurance proceeds are not in dispute. On December 21, 2004, Mr. Salmons suffered personal injuries when the school bus he was driving on behalf of the Wayne County Board of Education (WCBOE) was struck by an automobile

driven by Earlie Marie Dillon.  It is undisputed that at the time of the accident Mr. Salmons was operating the bus within the scope of his employment for the WCBOE.   According to Plaintiffs, it also is uncontested that Mrs. Dillon's negligent acts caused the accident, and her insurance carrier paid Mr. Salmons the $50,000 per person liability limit available under her policy.  As Mr. Salmons asserts that his damages exceed the $50,000 limit, he filed for underinsured motorist (UIM) benefits under the policy issued by Defendant that provides automobile liability coverage for the WCBOE.  Defendant denied his claim for benefits because it asserts that Mr. Salmons is not an "insured" for purposes of the UIM coverage under the policy.  The issue thus presented to the Court is whether Plaintiffs are eligible for benefits under the policy.

## II.
## THE HISTORY OF BRIM AND
## THE INSURANCE POLICY

The policy in controversy was issued by Defendant to the State of West Virginia, pursuant to the request of the West Virginia Board of Risk and Insurance Management (BRIM). BRIM was established by the West Virginia legislature in order to address the need for a centralized state insurance program. W. Va. Code § 29-12-1.  BRIM is vested with "general supervision and control over the insurance of state property, activities and responsibilities, including: (A) The acquisition . . . of state insurance . . . [and] (D) Determination of the conditions, limitations, exclusions, endorsements, amendments and deductible forms of insurance coverage[.]" W. Va. Code § 29-12-5.  BRIM also is responsible to "provide appropriate professional or other liability insurance for all county boards of education . . . ." W. Va. Code § 29-12-5a.  The BRIM insurance policy is not a typical consumer policy.  According to Robert A. Fisher, BRIM's Deputy Director and Claim Manager, State funds are held in deposit and Defendant pays claims from those funds as claims

arise. *Deposition of Robert A. Fisher*, at 17.  Although the policy is issued by Defendant, BRIM is solely responsible for its terms. *Id*. at 16-17 & 71.[1]

The effective dates of the policy in existence at the time of Mr. Salmon's accident were from July 1, 2004, until July 1, 2005.  On June 30, 2004, the West Virginia Supreme Court issued a ruling in *Miralles v. Snoderly*, 602 S.E.2d 534 (W. Va. 2004) (per curiam).  In *Miralles*, the court was presented with the question of whether UIM coverage was available under BRIM's insurance policy when the automobile accident was caused by the negligence of a third-party but occurred during the course of the plaintiff's employment and, therefore, was covered by workers' compensation. 602 S.E.2d at 536.  The exclusionary language that existed in the BRIM policy at the time of the accident in *Miralles* was contained in Endorsement #11 and provided for no uninsured and underinsured motorist coverage for "[a]ny obligation for which the 'insured' may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." *Id*. at 537.  In considering this language, the court found that, because the plaintiff's employer was the "insured" and it was not liable for the accident, the workers' compensation exclusion did not apply. *Id*. at 540-41.

Mr. Fisher stated at his deposition that the court's decision in *Miralles* was contrary to BRIM's intent. *Deposition of Mr. Fisher*, at 27.  Therefore, he and others had a meeting to discuss, inter alia, amending the policy because they believed that *Miralles* vastly increased BRIM's

---

[1]Mr. Fisher also stated that, because BRIM is a State agency, it is not subject to regulation by the West Virginia Insurance Commission. *Id*. at 41.

potential exposure for claims it did not intend to cover and for which it had not considered in calculating premiums. *Id*. at 34.  As Mr. Fisher explained:

> It has been BRIM's intent that a person ought not get more than one bite at the state's apple.  As I told you earlier, AIG[2] isn't spending their money.  They're spending taxpayer's money.  So Workers' Compensation is supposed to be a sole remedy.  If you get Workers' Compensation – which at the time was state money.  It has always been our intent that you should not collect from the state through Workers' Compensation and also be able to collect from the state through BRIM and its policies.

*Id*. at 34-35 (footnote added).   After a petition for rehearing in *Miralles* was denied, BRIM replaced Endorsement #11 with Endorsement #14, which provides:

> **This endorsement replaces and supersedes Endorsement #11 and modifies insurance provided under the following:**
>
> > West Virginia Uninsured and Underinsured Motorist Coverage (CA 21 22)
>
> **Section "B.  Who Is An Insured" is amended as follows:**
>
> 1. You, except anyone, including but not limited to an employee of the "insured," who is injured during the course and scope of employment.
>
> 2. If you are an individual, any "family member," except any "family member" who is injured during the course and scope of employment.
>
> 3. Anyone else while "occupying" or using a covered "auto" or a temporary substitute for a

---

[2]According to Defendant, American International Group, Inc. (AIG) is its parent company.

        covered "auto," except anyone else who is injured during the course and scope of employment. The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4.      Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured," unless such "bodily injury" is sustained during the course of employment.

**Section "C.   Exclusions," as amended by Endorsement #11, which is replaced and superseded by this Endorsement #14, is amended as follows:**

8.      Anyone, including but not limited to an employee of the "insured," who is injured during the course and scope of employment.

**Section "D.   Limit of Insurance" as amended by Endorsement #11, which is replaced and superceded by this Endorsement #14, is amended as follows:**

3.      [Deleted].

*Endorsement #14 of Certificate of Liability Insurance*. Endorsement #14 became effective on October 1, 2004. As it is undisputed that Mr. Salmons was injured during the course of his employment, he clearly is excluded from UIM coverage under Endorsement #14. However, Plaintiffs assert for a variety of reasons that the exclusion should not be enforced in this case. Upon careful review, the Court disagrees and finds that UIM coverage is not available.

**III.**
**STANDARD OF REVIEW**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). In this case, the parties agree that the material facts are largely undisputed and the legal questions presented are well suited for disposition on summary judgment. As the Court concurs with the parties' assessment, the Court will proceed to address the issues raised by the parties on summary judgment.

**IV.**
**DISCUSSION**

Plaintiffs first assert in their Motion for Summary Judgment that the WCBOE was not required to purchase its insurance through BRIM and it is a named insured, not just an additional insured, on the policy. Therefore, Plaintiffs claim that the WCBOE is entitled to the protections provided insureds under West Virginia law. In particular, Plaintiffs claim that West Virginia Code § 33-6-31(b) mandates an insurer offer UIM coverage in an amount not less than the liability limits purchased by the insured.[3] Plaintiffs argue such coverage may be limited only when a political

---

[3]West Virginia Code § 33-6-31(b) provides, in part:

> That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to

(continued...)

-6-

subdivision, such as the WCBOE, that has purchased the insurance, determines, in its discretion what those limitations shall be and it obtains a "custom-designed" policy, as provided by West Virginia Code § 29-12A-16(a).[4] Thus, Plaintiffs dispute that BRIM has the authority to limit the terms and conditions of the policy on the WCBOE's behalf.

Pursuant to West Virginia Code § 29-12-5a(a), BRIM must provide liability insurance for all county boards of education. West Virginia Code § 29-12-5(a) further provides that BRIM "has, without limitation and in its discretion as it seems necessary for the benefit of the

---

[3](...continued)
> pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an . . . underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

W. Va. Code § 33-6-31(b), in part.

[4]West Virginia Code § 29-12A-16(a) provides:

> A political subdivision may use public funds to secure insurance with respect to its potential liability and that of its employees for damages in civil actions for injury, death or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees, including insurance coverage procured through the state board of risk and insurance management. The insurance may be at the limits for the circumstances, and subject to the terms and conditions that are determined by the political subdivision in its discretion.

W. Va. Code § 29-12A-16(a).

-7-

insurance program, general supervision and control over the insurance of state property, activities and responsibilities[.]" W. Va. Code § 29-12-5(a)(1) and (3).  BRIM's power and duties include, in relevant part:

> (A) The acquisition and cancellation of state insurance;
>
> (B) Determination of the kind or kinds of coverage;
>
> (C) Determination of the amount or limits for each kind of coverage; [and]
>
> (D) Determination of the conditions, limitations, exclusions, endorsements, amendments and deductible forms of insurance coverage;
>
> \*     \*     \*
>
> (3)  The board is not required to provide insurance for every state property, activity or responsibility.

W. Va. Code § 29-12-5(a)(1) and (3), in part.  In examining this statute and its relationship with West Virginia Code § 33-6-31(b), the West Virginia Supreme Court stated in Syllabus Point 1 of *Trent v. Cook*, 482 S.E.2d 218 (W. Va. 1996):

> West Virginia Code § 29-12A-16(a) (1992) conveys broad discretion to both the West Virginia State Board of Risk and Insurance Management, as well as governmental entities, with regard to the type and amount of insurance to obtain.  Consequently, when an insurer issues a custom-designed insurance policy to a governmental entity pursuant to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29-12A-1 to -18 (1992), that entity may incorporate language absolutely limiting liability under the policy, even if such language would otherwise violate the provisions of West Virginia Code § 33-6-31(b) (1996).

Syl. Pt. 1, *Trent*.[5]  In *Gibson v. Northfield Ins. Co.*, 631 S.E.2d 598 (W. Va. 2005), the court reiterated that "[a]n insurance company may incorporate limiting terms and conditions that violate *W. Va. Code,* 33-6-31 into a governmental entity's insurance policy.  However, to be permissible under *W. Va. Code,* 29-12A-16(a) [2003], the limiting terms and conditions in the insurance policy must clearly be "determined by the political subdivision in its discretion."'  Syl. Pt. 5, in part.

Plaintiffs seize upon the language in *Gibson* to support their position that only the political subdivision, i.e. the WCBOE, may limit UIM coverage.  However, *Gibson* involved a policy purchased directly from the insurer by the City of Charleston. 631 S.E.2d at 601.  The court in *Gibson* did not have to address whether BRIM also has authority to limit UIM coverage.  Thus, the language cited by Plaintiffs does not control this issue.  Clearly, the language of West Virginia Code § 29-12-5(a) gives such authority to BRIM, and BRIM's broad discretion and ability to limit coverage, even when it is contrary to West Virginia Code § 33-6-31(b), was recognized in *Trent*.  Therefore, the Court disagrees with Plaintiffs that BRIM lacked authority to exclude UIM coverage under the policy for those employees who receive workers' compensation benefits.

Next, Plaintiffs argue that the language in Endorsement #14 is contrary to the holding in *Miralles* and, therefore, it should not be enforced.  However, as previously discussed, the holding in *Miralles* involved exclusionary language which is different than the language at issue in this case.  In *Miralles*, the court found the workers' compensation exclusion did not apply because the language in Endorsement #11 did not apply to a third-party tortfeasor.  Following the *Miralles*

---

[5]*Modified on other grounds Gibson v. Northfield Ins. Co.*, 631 S.E.2d 598 (W. Va. 2005).

-9-

decision, Endorsement #14 was added to specifically address the third-party tortfeasor situation. There is nothing in the *Miralles* decision that prevented BRIM from amending the policy to eliminate UIM coverage when injuries are caused by a third-party tortfeasor. Accordingly, the Court finds no reason to find that Endorsement #14 is prohibited by the *Miralles* decision.

Plaintiffs also argue that, even if the exclusionary language is valid, it should not be given effect because the WCBOE was not provided any notice of the mid-term policy change. Plaintiffs assert that, when the exclusionary language was added, it should have been provided to the WCBOE in a conspicuous, plain, and clear manner and Defendant should have obtained a signed rejection of UIM coverage by the WCBOE. John Thompson, who serves as the treasurer and chief school business official for the WCBOE, stated at his deposition that, if he had known the coverage was eliminated, he would have at the least obtained a quote for UIM coverage so that the WCBOE could have determined whether or not it wanted to get such coverage. *Deposition of John Thompson*, at 9-11.

If the policy here was purchased directly by the WCBOE from an insurance company,[6] the Court would agree with Plaintiff that the company could not unilaterally, and without any notice, amend the policy mid-term to add Endorsement #14 to eliminate UIM coverage. However, the policy at issue here was obtained through BRIM, and the West Virginia Legislature has vested BRIM with broad discretion and powers in obtaining and determining coverage. *See*

---

[6] There appears to be a disagreement as to whether or not the WCBOE can purchase insurance on the open market. The Court makes no ruling on this issue.

W. Va. Code § 29-12-5(a)(1). This power includes "[d]etermination of the conditions, limitations, exclusions, endorsements, amendments and deductible forms of insurance coverage[.]" *Id.* Plaintiff further argues, however, that BRIM's authority is limited to state property and activities and not those of a county, such as a county board of education. *See* W. Va. Code § 29-12-1 (stating, in part, that the intent and objective is to establish and develop "an adequate, economical and sound state insurance and bonding service on all state property, activity and responsibilities").[7] The Court disagrees.

Pursuant to West Virginia Code § 29-12-5a, BRIM must provide "appropriate professional or other liability insurance for all county boards of education" "[*i*]*n accordance with the provisions of*" Article 12. W. Va. Code § 29-12-5a, in part (italics added). As the broad powers

---

[7]West Virginia Code § 29-12-2 defines "state property activities, "state responsibilities," and "state property" as follows:

> (e) "State property activities" and "state responsibilities" means and includes all operations, boards, commissions, works, projects and functions of the state, its properties, officials, agents and employees which, within the scope and in the course of governmental employment, may be subject to liability, loss, damage, risks and hazards recognized to be and normally included within insurance and bond coverages.
>
> (f) "State property" means all property belonging to the state of West Virginia and any boards or commissions thereof wherever situated and which is the subject of risk or reasonably considered to be subject to loss or damage or liability by any single occurrence of any event insured against.

W. Va. Code § 29-12-2(e) and (f).

given to BRIM are contained within Article 12, the Court finds BRIM's authority under § 29-12-5(a)(1) is not limited merely because the policy was provided to a county board of education. This finding is further supported by the fact § 29-12-5(b)(2) states that, if BRIM provides liability insurance to a political subdivision (which includes a county board of education),[8] BRIM "may enter into any contract necessary to the execution of the powers granted by this article or to further the intent of this article." W. Va. Code § 29-12-5(b)(2), in part. Likewise, subsection 5a continues on to provide that "insurance coverage shall be in an amount to be determined by . . . [BRIM], but in no event less than one million dollars for each occurrence." W. Va. Code § 29-12-5a, in part. Thus, the Court finds BRIM was acting within its clear statutory authority in amending the policy, and Plaintiffs' arguments are without merit.

Finally, Plaintiffs argue that the limitations in the policy cannot be enforced because the policy was not custom-designed by the WCBOE. Plaintiffs insist that BRIM has no authority to act of the WCBOE's behalf in designing the policy, and the WCBOE has never relinquished such authority to BRIM. As previously discussed, Plaintiffs' argument is contrary to the legislatively vested powers afforded to BRIM, and, therefore, such argument is denied.[9]

---

[8]West Virginia Code § 29-12-5(b)(1)(A) states that a "political subdivision" has the same meaning as found in § 29-12A-3. This section includes county boards of education within its definition of a "political subdivision." W. Va. Code § 29-12A-3.

[9]The Court also has no difficulty finding that Endorsement #14 was custom-designed by BRIM. In the Affidavit of Ancil G. Ramey, he stated that he drafted Endorsement #14 at BRIM's request following the *Miralles* decision. *Affidavit of Ancil G. Ramey*, at ¶ 13. He also averred "[t]he amendatory endorsement was authored exclusively by . . . [him] in an effort to effectuate BRIM's intent that the subject policy not provide uninsured or underinsured motorist coverage for employees injured while in the course and scope of employment." *Id*. Although Plaintiffs complain because
(continued...)

## V.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:  October 3, 2007

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[9](...continued)
Mr. Ramey represented Defendant in the *Miralles* case and he is an expert witness for Defendant in this case, he drafted the endorsement at issue in this case at BRIM's request, not Defendant's.